**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 8, 2005**

**TENTH CIRCUIT**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 04-6290 |
| | (W. D. Oklahoma) |
| KENNETH EUGENE BOWIE, | (D.Ct. No. 03-CR-6-M) |
| Defendant-Appellant. | |

_____

**ORDER AND JUDGMENT**[*]

_____

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Pursuant to a plea agreement, which included a waiver of appellate rights, Kenneth Eugene Bowie pled guilty to being a felon in possession of a firearm

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(Count 1) and possession of a firearm in furtherance of a drug trafficking crime (Count 2), in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1), respectively. He was sentenced to the statutory maximum of 120 months on Count 1 and a consecutive term of sixty months, the statutory mandatory minimum, on Count 2. Bowie appeals from his sentence, arguing the district court improperly enhanced his sentence in violation of *United States v. Booker*, 534 U.S. 220, 125 S.Ct. 738 (2005). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I. Factual Background

In January 2001, the Bureau of Alcohol, Tobacco and Firearms (ATF) began investigating the Outlaws Motorcycle Club in Oklahoma for various firearms and drug offenses. By October 2002, Bowie and his wife, Brenda, had been identified as individuals responsible for manufacturing methamphetamine and distributing it to members of the club. A confidential informant working with the ATF purchased methamphetamine from the Bowies and notified the ATF of other unlawful activities, including a trip to a marijuana patch to harvest plants.

On May 8, 2003, a forty-eight-count indictment was returned by the grand jury in the Western District of Oklahoma charging Bowie, his wife, and seven others with drug and firearms offenses. On February 9, 2004, a two-count Superseding Information was filed, charging Bowie with one count of being a

felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Pursuant to a written plea agreement, Bowie pled guilty to each count. As part of that agreement, Bowie agreed to waive his right to appeal and forfeited several firearms.[1]

A lengthy presentence investigation report (PSIR) was prepared in April 2004. For Count 1, felon in possession of a firearm, the base offense level under the guidelines was 14. USSG §2K2.1(a)(6) (2000).[2] However, because Bowie possessed the firearm "in connection with the commission or attempted commission of another felony offense . . . ", §2K2.1(c) required a cross-reference to §2X1.1. USSG §2K2.1(c)(1)(A). Section 2X1.1(a) in turn required the base offense level to be calculated "from the guideline for the substantive offense . . ."; in this case, the manufacture and distribution of drugs. The probation officer held Bowie accountable for 161,375.34 kilograms of marijuana equivalent.[3]

---

[1] After Bowie filed his notice of appeal, the government moved to enforce his waiver of his right to appeal. We denied the government's motion, because his appeal was not within the scope of the waiver.

[2] The PSIR and the eventual sentence applied the November 2000 edition of the United States Sentencing Guidelines. Thus, all references to the guidelines are to the 2000 edition unless otherwise noted.

[3] Although Bowie's offense involved pseudoephedrine/ephedrine, psilocybin mushrooms methamphetamine, and marijuana, the probation officer converted the amounts of these drugs to their marijuana equivalencies for purposes of calculating the base offense level pursuant to USSG §2D1.1(c). *See* USSG §2D1.1, comment. (n. 10)

Based on this quantity, the base offense level was 38. USSG §2D1.1(c)(1). This offense level, coupled with Bowie's criminal history category of III, resulted in a guideline range of 235 to 293 months imprisonment on Count 1. The maximum sentence permitted by statute, however, was 120 months. On Count 2, the guideline range was the minimum term of imprisonment required by statute, sixty months.

Bowie objected to a majority of the PSIR, particularly the quantity of drugs for which he was held accountable. He also objected based on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004).

Sentencing was held on September 30, 2004. The government presented three witnesses in addition to the case agent. Melissa Kim Pichurko testified she had purchased methamphetamine from Bowie and his wife. Robert Thornton testified he had observed and was involved in the manufacture and distribution of methamphetamine with Bowie and others and described the quantities of methamphetamine being produced. Thornton also testified he had observed firearms at Bowie's home. Tracy Delana testified that she and Tom Delana had produced and distributed methamphetamine with Bowie and his wife.

Special Agent Delbert Knopp testified to the results of the investigation,

("The Drug Equivalency Tables [] provide a means for combining differing controlled substances to obtain a single offense level.").

including the statements made by cooperating defendants involved in the methamphetamine trade with Bowie. Agent Knopp also sponsored the admission of a photograph depicting Bowie holding a rifle. Finally, Agent Knopp testified that Bowie and his wife routinely possessed firearms during their drug trafficking activities.

After hearing the testimony, the district court overruled Bowie's objections to the PSIR and held Bowie accountable for the entire amount of drugs identified in the report. With respect to *Blakely*, the district court stated it would sentence "based upon the guidelines, but [would] provide two alternate sentences, one of which may be substituted for the guideline sentence in the event that the Sentencing Guidelines are ultimately found to be unconstitutional in whole or in part." (R. Vol. 1 at 119.) The district court sentenced Bowie to consecutive terms of 120 months on Count 1 and sixty months on Count 2. The court then imposed an identical alternate sentence, to be effective "[i]f the Federal Sentencing Guidelines are later found to be unconstitutional in their entirety." (*Id.* at 122.) The court noted that this sentence was appropriate based upon "the nature of the offense involved and the quantity of drugs involved, [Bowie's] criminal history, and so forth." (*Id.* at 123.) The second alternate sentence was twenty-one months on Count 1 and sixty months on Count 2, to be imposed if "only the upward enhancements of the Federal Sentencing Guidelines are [] found

to be unconstitutional." (*Id.* at 123.)

On appeal, Bowie argues the district court improperly used the preponderance of the evidence standard in finding facts upon which to base his sentence in violation of the Sixth Amendment. He contends his sentence should have been based upon the guidelines applicable to the firearm offenses to which he pled guilty and not enhanced through application of guidelines relating to drug offenses. Finally, he asserts the error was not harmless beyond a reasonable doubt and asks this Court to reverse his sentence and remand to the district court with direction to impose the second alternate sentence.

In response, the government contends any constitutional error in sentencing Bowie based on judge-found facts utilizing the preponderance of the evidence standard was harmless beyond a reasonable doubt. The government points to the district court's imposition of the first alternate sentence - identical to the original sentence - as "[t]he most probative fact in support of the harmless error argument." (Appellee's Br. at 12.) It argues this proves that "[f]ree from the constraints of any guideline system, the court would have imposed the statutory maximum in Count 1." (*Id.*)

## II. Standard of Review

At sentencing, Bowie argued against enhancing his sentence using judge-found facts, contending the Supreme Court's holding in *Blakely* applied. He thus

has properly preserved his Sixth Amendment argument, and we will apply the holdings in *Blakely* and *Booker* to this appeal. *United States v. Serrata,* 425 F.3d 886, 915 (10th Cir. 2005) (citing *United States v. Clifton*, 406 F.3d 1173, 1176 n.1 (10th Cir. 2005)). Therefore, our inquiry is whether the court's constitutional error at sentencing was harmless under Rule 52(a), Federal Rules of Criminal Procedure. *United States v. Lang*, 405 F.3d 1060, 1064 (10th Cir. 2005). Rule 52(a) states: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." The government bears the burden of demonstrating the error was harmless and in cases involving constitutional error, must do so beyond a reasonable doubt. *Lang*, 405 F.3d at 1065.

## III. Discussion

In this case, we have little difficulty in concluding that the constitutional error at sentencing was harmless based on the district court's imposition of an alternate sentence identical to the original sentence. Unlike the case we confronted in *United States v. Labastida-Segura*, we are not placed in a "zone of speculation or conjecture" as to whether the district court would impose the same sentence under a post-*Booker* sentencing scheme; we know it would. 396 F.3d 1140, 1143 (10th Cir. 2005). Additionally, although the district court did not

-7-

specifically cite 18 U.S.C. § 3553(a)[4] when imposing the first alternate sentence, the court's remarks mirrored the "[f]actors to be considered in imposing a sentence" set forth in that statute. 18 U.S.C. § 3553(a). In imposing the first alternate sentence, the district court commented on the factors supporting the statutory maximum sentence on Count 1: "[T]his Court finds that the appropriateness of that sentence is certainly based upon the nature of the offense involved and the quantity of drugs involved, the Defendant's criminal history, and so forth." (R. Vol. 1 at 123.) In this case, as in *United States v. Serrano-Dominguez*, the district court applied the methodology suggested in *Booker*. 406

---

[4] Section 3553(a) states in relevant part:

(a) **Factors to be considered in imposing a sentence**. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider —

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed —
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

. . .

F.3d 1221, 1222 (10th Cir. 2005). The court imposed an alternate sentence, reviewed the factors supporting that sentence, and concluded in the event the guidelines were found to be unconstitutional in their entirety, Bowie would receive the same sentence. *Id*.; *see also United States v. Lawrence*, 405 F.3d 888, 907 (10th Cir. 2005) ("[T]he Supreme Court's holding in *Booker* would not have prohibited the district court from making the same factual findings and applying the same enhancements and adjustments to [the defendant's] sentence as long as it did not apply the Guidelines in a mandatory fashion."), *cert. denied*, 126 S.Ct. 468 (2005). Thus, any error is harmless.

Similarly, there was no error in sentencing Bowie on Count 2; Bowie received the mandatory minimum sentence of sixty months. As we noted in *United States v. Payton,* there is no constitutional error when a defendant receives the required minimum sentence nor any non-constitutional *Booker* error when, based on admitted facts in a guilty plea, "the district court had no discretion under the statute to do other than impose the mandatory minimum sentence." 405 F.3d 1168, 1173 (10th Cir. 2005).

We finally address Bowie's request that we remand this matter and direct the district court to impose the second alternate sentence. The second alternate sentence was to be imposed only if the upward enhancements alone were deemed unconstitutional. Since such was not the holding in *Booker*, we know what the

district court would do were we to remand: it would impose the first alternate sentence, not the second. "A remand would needlessly burden the district court and counsel with another sentencing proceeding, which we know would produce the same result." *Serrano-Dominguez*, 406 F.3d at 1224. Consequently, we conclude the constitutional *Booker* error at Bowie's sentencing was harmless beyond a reasonable doubt. AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge